1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

EASTERN DISTRICT OF CALIFORNIA

10

11  STEVEN EDWARD FELIPE,                    Case No.  1:13-cv-01744-SKO

12                                           **ORDER ON PLAINTIFF'S COMPLAINT**
                        Plaintiff,
13                                           (Doc. No. 12)

14          v.

15
    CAROLYN W. COLVIN,
16  Acting Commissioner of Social Security,

17                      Defendant.

18

19  _____

20

21                        **I.    INTRODUCTION**

22          Plaintiff, Steven Edward Felipe ("Plaintiff"), seeks judicial review of a final decision of the

23  Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application

24  for Disability Insurance Benefits ("DIB") benefits pursuant to Title II of the Social Security Act.

25  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were

26  submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate

27  Judge.[1]

28  _____

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 8.)

## II.   FACTUAL BACKGROUND

Plaintiff was born on January 19, 1966, and alleges disability beginning on October 1, 2009.  Plaintiff claims he is disabled due to severe chronic low back pain, peripheral neuropathy due to Diabetes Mellitus, hypertension, and obesity.  (AR 178-79.)

### A.   Relevant Medical Evidence

#### a.   Progress Notes by Dr. Nicholas E. Nomicos

From November 2009 through February 2011, Plaintiff was seen by Nicholas E. Nomicos, M.D., for symptoms from a self-reported back injury in February of 2009, when Plaintiff claimed his back "went out" and he began suffering back pain to the point that he could "barely walk." (AR 186.)  On November 17, 2009, Dr. Nomicos diagnosed Plaintiff with severe back pain, severe obesity, hypertension, and Diabetes Mellitus (AR 186), and began treating Plaintiff in December 2009 for radiating pain through both legs and muscle spasms (AR 187; 189).

On December 21, 2010, Dr. Nomicos noted that Plaintiff was using a walker most of the time, and recommended Plaintiff switch to pain medication patches because he only reported success in controlling pain with Darvocet.  (AR 199.)  Dr. Nomicos also filled out a DIB Doctor's Certificate on December 29th, noting Plaintiff's back pain was "severe/debilitating" since February 15, 2009, and Plaintiff was "unable to walk without [a] cane/assistance."  (AR 188.)  Plaintiff continued seeing Dr. Nomicos for pain and muscle spasms through February 2011.  (AR 190-91; 192; 194-96; 197; 201.)

#### b.   Case Analyses by Non-Examining State Agency Physicians

In the initial denial of Plaintiff's application for benefits, medical examiner L. Bobba, M.D., reviewed Plaintiff's medical record on April 5, 2011, and medical examiner P.N. Ligot, M.D., reviewed Plaintiff's medical record on June 13, 2011.  Both examiners noted that Plaintiff used his walker to get around his house and was unable to walk without his cane or assistance. (AR 202; 204.)  Both examiners determined that Plaintiff did not meet or equal Listing 1.04, or any other Listing, and that Plaintiff was "partially credible" because while the medical record supported his claims of back pain, it did not support Listing-level back pain.  (AR 202; 204.) Complaining that the exams in the record were "not very specific and [were] difficult to

1   decipher[,]" both examiners specifically noted that absent more elaborate exams or studies dealing

2   with Plaintiff's severe back pain, they could not establish or confirm the extent or cause of the

3   pain.  (AR 203; 205.)

4           **c.       Progress Notes by Dr. Youssef Hadweh**

5           From May 2011 through May 2012, Plaintiff was seen by Youssef Hadweh, M.D., for his

6   low back pain.  (AR 209-29.)  Starting with his initial evaluation with Dr. Hadweh on May 26,

7   2011, Plaintiff continually complained of chronic back pain, and was prescribed Oxycodone,

8   Flexeril, Prednosone, and Oxycorlone to help with his symptoms.  (AR 227.)  Dr. Hadweh noted

9   Plaintiff's other medical conditions, including Diabetes Milletus and morbid obesity, (AR 227-28,

10  218), and noted on more than one occasion Plaintiff's subjective complaint that his "back is killing

11  me," (AR 222; 218; 215; 210), and that Plaintiff's weight could not be determined because he was

12  "unable to stand" (AR 217; 216; 215; 211; 210).

13          A CT of the lumbar spine on June 10, 2011, just a few days prior to Dr. Ligot's case

14  review, showed "moderate multilevel degenerative changes, with no acute fracture or dislocation."

15  (AR 221.)   The radiologist noted that the exam was a "limited" one and was "almost

16  uninterpretable" – the technologist indicated that Plaintiff "was unable to cooperate" with the

17  exam.  (AR 221.)  As further evaluation was recommended by the radiologist, on July 2, 2011, Dr.

18  Hadweh ordered further scans of Plaintiff's lumbar spine.  (AR 220.)  On July 20, 2011, a CT scan

19  of Plaintiff's lumbo-sacral spine revealed "[m]oderate osteoarthritis and osteopenia in the forms of

20  anterior lateral and posterior hypertrophic lipping, marginal sclerosis with disc space narrowing,

21  vacuum phenomenon most prominent in L5-S1, L3-L4 and L1-L2."  (AR 219.)  The radiologist

22  opined the scan indicated "[d]egenerative disc disease L5-S1, L1-L2 and L3-L4."  (AR 219.)

23          On August 13, 2011, Plaintiff complained to Dr. Hadweh that his "feet and legs" were

24  "swollen" and that he had "no energy."  (AR 217.)  Dr. Hadweh noted that Plaintiff's lower legs

25  were in fact swollen and he had a poor pulse (AR 217), and that on August 27, 2011, Plaintiff's

26  feet were "pink and smelly" but uninfected (AR 216.)  Plaintiff complained that his lower back

27  was "still painful" at the L5 level on September 2, 2011, and a magnetic resonance imaging study

28  ("MRI") was ordered.  (AR 215.)

An MRI conducted on September 16, 2011, revealed multiple disc protrusions and bulging at levels T12-L1 through L5-S1, and the radiologist noted that Plaintiff "was not able to hold still" resulting in a motion artifact to the study, and that despite lying in a "prone position rather than in a normal supine position" Plaintiff "declined to complete the examination."   (AR 212.) Specifically, the MRI revealed spinal canal stenosis prominent at L2-L3 and L3-L4, moderate prominent at L4-L5, moderate at L1-L2, and at the right lateral recess of T12-L1.  (AR 212.) Bilateral neural foraminal stenosis was observed prominent at L5-S1, moderate at L3-L4 and L4-L5, and mild at L2-L3.  (AR 212-13.)  Diffuse disc bulging was observed at L1-L2 through L5-S1; disc herniation was seen in the right paracentral region of T12-L1, 4mm; and, disc extrusion was seen at in the right paracentral region of L5-S1, 8mm.  (AR 213.)

In a follow-up appointment on October 13, 2011, Dr. Hadweh noted that Plaintiff reported his chronic back pain and pain radiating down both his legs at a 9 out of 10, with some improvement from medication.  (AR 211.)  On November 11, 2011, Plaintiff's back and leg pain were "killing" him (AR 210), and as of December 15, 2011, Plaintiff was still being seen by Dr. Hadweh for chronic pain (AR 209).  On May 11, 2012, Plaintiff told Dr. Hadweh that his "back and legs [were] very painful" and Dr. Hadweh opined that the chronic back pain was secondary to Plaintiff's morbid obesity."  (AR 229.)  Dr. Hadweh prescribed more diet and exercise for Plaintiff to improve his symptoms, and wrote a prescription for a four-wheel walker.  (AR 229.)

### d.      Medical Source Statement by PA Ricardo Regalado

Dr. Hadweh's physician's assistant, Ricardo Regalado, filled out a Medical Source Statement of Ability to Do Work-Related Activities for Plaintiff on May 11, 2012, noting Plaintiff could occasionally lift and carry weights up to 10 pounds, could not sit for longer than 2 hours a day with or without interruption, stand or walk for longer than 20 minutes without interruption, and could not walk without a cane more than a few steps due to his chronic lumbo-sacral pain, peripheral neuropathy, and morbid obesity.  (AR 230-31.)  Mr. Regalado opined that Plaintiff could frequently reach overhead but only occasionally reach, push, or pull in any other direction, and could only occasionally use his feet for foot controls due to his peripheral neuropathy secondary to his Diabetes Milletus, and chronic neck and back pain (AR 233), and Plaintiff could

never engage in activities like crawling, kneeling, crouching, or climbing stairs, ramps, ladders, or scaffolds (AR 234).

Mr. Regalado also stated Plaintiff could only work in moderate noise conditions, and would not be able to tolerate heights, moving mechanical parts and motor vehicles, extreme temperatures or humidity, vibrations, or pulmonary irritants.  (AR 235.)  In his assessment of Plaintiff's ability to handle his activities of daily living, Mr. Regalado opined Plaintiff could not shop or travel on his own, could not walk at a reasonable pace on rough or uneven surfaces or without assistance, could not use public transportation, and could not climb a few steps with use of a single hand rail at a reasonable pace.  (AR 236.)  Mr. Regalado noted, however, that Plaintiff could prepare a simple meal to feed himself, care for his own personal hygiene, and could sort, hand, and use paper/files.  (AR 236.)  Finally, Mr. Regalado opined that the limitations he had found were first present on October 10, 2008, and that those limitations had lasted or would last for 12 consecutive months.  (AR 236.)

**B.      Plaintiff's Testimony**

Plaintiff testified at his June 14, 2012 hearing that he has a Bachelor of Science degree in electrical engineering, with past work experience in application engineering, software sales, and utility operation at a power plant.  (AR 23-30.)  He testified that his last gainful employment was as a utility operator for a power plant for roughly a year and a half, where he drove a front-end loader and repaired machinery for the plant.  (AR 25-28.)  That employment ended in April 2009, when he was laid off, and Plaintiff testified that he was unable to work at another job due to the limitations imposed by his chronic pain.  (AR 28 ("I'm in so much pain that I can't concentrate.  I am not ambulatory.  I have to use a walker to go anywhere.").)

When asked about the origin of his pain, Plaintiff testified that his back is "messed up" due to several herniated discs, attributable to osteoporosis and lifetime back problems.  (AR 29.)  Plaintiff testified that his lower back pain was caused by motion, which "pinches nerves in [his] back, and it's very painful."  (AR 30.)  The pain "cuts off the nerves in [his] legs; so [he] ha[s] limited feeling over large portions of [his] body."  (AR 30.)  Plaintiff described the pain through his legs as being "enough to stop [his] legs from working."  (AR 31.)  While the pain is greatest in

the lower lumbar region, Plaintiff stated that his upper back hurts as well and he has "limited feeling" in his arms and numbness in "the last two fingers on either hand[.]"  (AR 30-31.)  The pain in his lower back is present "[a]ll the time," and Plaintiff testified that his pain medication only "kind of tone[s the pain] down, but it's not gone."  (AR 31 (noting that while medicated, his pain is a 4 out of 10, and when he's not medicated, it's a 10 out of 10 – where 10 is measured as needing to go to the emergency room.)

Plaintiff was in a wheelchair at the hearing, because he "didn't know how far [he] was going to have to walk, and [he] can only walk about 100 feet with [his] walker[,]" but stated that he did not have  a prescription for a wheelchair, only for a walker.  (AR 30.)  He stated that he is unable to walk around his home without using the walker, and "can't take a single step without falling down" without the walker.  (AR 33.)  Plaintiff described his difficulties with walking and balancing, testifying that he takes muscle relaxants because the pain causes "leg spasms" while he is trying to take a step, and as a result he "could fall down very easily."  (AR 32.)  He testified that with his walker, he cannot walk out farther than 100 feet because "[t]he neural signals in [his] legs degrade to a point where it's like [ ] walking in sand, and they just won't obey; so [his] legs start giving out."  (AR 34.)  When braced with his walker, Plaintiff testified he can stand stationary for "about 10 to 12 minutes."  (AR 34.)  Plaintiff also stated that sitting still is difficult due to the pain, and he has to change positions, every 20 or 30 minutes, or recline about two or three hours out of every eight, to alleviate the pain caused by pressure on the herniated discs.  (AR 34-35.)  His back is swollen "constantly" and portions of his spine are "kind of bulgy" due to knotted muscles around his pinched nerves.  (AR 32-33.)

Plaintiff also testified that he went to a pain doctor, but had not had surgery or been prescribed any physical therapy.  (AR 35-36.)  He is able to help out around his sister's home with dusting, which he states he does from the wheelchair with the help of an extended wand, but is unable to vacuum, sweep, or mop.  (AR 37.)  He is able to take care of his own bathing and dressing, and prepare simple, basic meals for himself.  (AR 37-38.)  Plaintiff stated that he could only lift five to ten pounds at maximum, due to the added pressure to his spine, and that he has to wear a brace whenever he uses his walker.  (AR 38-39.)

Plaintiff testified that he is five feet, nine inches tall and weighs around 350 pounds, and that he had been overweight since childhood. (AR 29.) He told the ALJ that his insulin levels and hypertension are "fairly well controlled" (AR 36; 37), and he is on Hydrocodone, Tramadol, and Flexeril for his pain and muscle spasms (AR 39.) Plaintiff also stated that his "memory is gone" and he is "constantly in a fog" as a side effect of the medication, but he regularly watches television and spends a substantial amount of time reading. (AR 39-40.)

**C.     Administrative Proceedings**

On June 21, 2012, the ALJ issued a decision and determined Plaintiff was not disabled. (AR 11-17.) The ALJ found that Plaintiff had severe impairments including chronic low back pain, spinal canal stenosis, degenerative disc disease, and obesity. (AR 13.) The ALJ determined that these impairments did not meet or equal a listed impairment. (AR 14.) The ALJ found Plaintiff retained the residual functional capacity ("RFC") to "lift and carry 10 pounds occasionally, less than 10 pounds frequently, sit 6 hours, and stand and walk 2 hours in an 8-hour workday" and "was also capable of occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs, but [ ] was unable to climb ladders, ropes, or scaffolds[.]" (AR 14.) Given this RFC, the ALJ found Plaintiff was capable of performing his past relevant work as an applications engineer. (AR 16-17.) The ALJ concluded that Plaintiff was not under disability, as defined in the Social Security Act, from October 1, 2009, the alleged onset date, through December 31, 2009, the date last insured. (AR 17.)

**D.     Plaintiff's Complaint**

On October 30, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Hadweh's opinions in determining Plaintiff's RFC and finding Plaintiff was not disabled. (Docs. 12, 6-11; 14, 4-5.)

### III.   SCOPE OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld by a district court if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007);

*Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir. 1989); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985) (the findings of the Commissioner as to *any* fact, if supported by substantial evidence, are conclusive.) Substantial evidence is more than a mere scintilla, but less than a preponderance. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted); *see also Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion.") The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

The role of the Court is *not* to substitute its discretion in the place of the ALJ – "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted); *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."); *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir.

1  1987) (if substantial evidence supports the administrative findings, or if there is conflicting
2  evidence supporting a particular finding, the finding of the Commissioner is conclusive).  The
3  court will not reverse the Commissioner's decision if it is based on harmless error, which exists
4  only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate
5  nondisability determination.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)
6  (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400
7  F.3d 676, 679 (9th Cir. 2005).

## IV.   APPLICABLE LAW

9        An individual is considered disabled for purposes of disability benefits if he is unable to
10  engage in any substantial, gainful activity by reason of any medically determinable physical or
11  mental impairment that can be expected to result in death or that has lasted, or can be expected to
12  last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),
13  1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or
14  impairments must result from anatomical, physiological, or psychological abnormalities that are
15  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of
16  such severity that the claimant is not only unable to do his previous work, but cannot, considering
17  his age, education, and work experience, engage in any other kind of substantial, gainful work that
18  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

19        The regulations provide that the ALJ must undertake a specific five-step sequential
20  analysis in the process of evaluating a disability.  In Step 1, the ALJ must determine whether the
21  claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b),
22  416.920(b).  If not, the ALJ must determine at Step 2 whether the claimant has a severe
23  impairment or a combination of impairments significantly limiting her from performing basic
24  work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, the ALJ moves to Step 3 and determines
25  whether the claimant has a severe impairment or combination of impairments that meet or equal
26  the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is
27  therefore presumptively disabled.  *Id.* §§ 404.1520(d), 416.920(d).  If not, at Step 4 the ALJ must
28  determine whether the claimant has sufficient RFC despite the impairment or various limitations

1  to perform her past work. *Id.* §§ 404.1520(f), 416.920(f).  If not, at Step 5, the burden shifts to the

2  Commissioner to show that the claimant can perform other work that exists in significant numbers

3  in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or

4  not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v.*

5  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

6                          **V.    DISCUSSION**

7  **A.    The ALJ's Consideration of the Medical Evidence**

8       Plaintiff argues that the ALJ improperly discredited portions of Dr. Hadweh's opinion and

9  erred in disregarding Dr. Nomicos' opinion.  The Commissioner contends the ALJ properly

10  considered the medical evidence and found Plaintiff not disabled.

11           **1.    Legal Standard**

12       Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

13  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

14  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

15  physicians).  As a general rule, the opinion of a treating doctor is entitled to more weight than the

16  opinion of doctors who did not treat the claimant, *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.

17  1987), and absent contradiction by another doctor's opinion, may be rejected only for "clear and

18  convincing" reasons, *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if directly

19  contradicted by another doctor's opinion, the ALJ must articulate "specific and legitimate reasons"

20  that are supported by substantial evidence in the record, to justify rejecting the treating doctor's

21  opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

22           **2.    The ALJ Improperly Discounted Portions of Dr. Hadweh's Opinion**

23       Plaintiff argues that the ALJ improperly rejected Dr. Hadweh's opinion, and failed to

24  articulate any specific or legitimate reason for finding Plaintiff to be "more physically capable

25  than opined by Dr. Hadweh."  (Doc. 12, 7; *see* AR. 15.)  Though the ALJ accorded "significant

26  weight" to Dr. Hadweh's opinion, he rejected Dr. Hadweh's prescribed work limitations because

27  they "conflicted" with examination findings showing "normal extremities" on two occasions.

28  (AR 15.)  Plaintiff argues the ALJ misconstrued and misrepresented the medical record, because

1   Dr. Hadweh's examination notes revealed "normal extremities" on only 2 occasions out of 12

2   examinations – far from a sufficient number to justify finding that Plaintiff's extremities were

3   generally "normal."  (Doc. 12, 7-8.)  Plaintiff argues that such limited findings reflect only that

4   Plaintiff experienced occasional relief from his symptoms, *not* that Dr. Hadweh's opinion was

5   unsupported by his examination findings.  (Doc. 12, 8.)

6         Plaintiff further contends the ALJ's erroneous discounting of Dr. Hadweh's opined work

7   limitations was harmful error.  Dr. Hadweh opined Plaintiff could not climb a few steps at a

8   reasonable pace with the use of a single hand rail and could not walk a reasonable pace on rough

9   or uneven surfaces – limitations which Plaintiff argues are consistent with the inability to

10  ambulate effectively and functionally equivalent to Listing 1.04C.  Had Dr. Hadweh's opinion

11  been properly and fully credited, Plaintiff argues that he would have been entitled to a presumptive

12  disability finding at Step 3. (Doc. 12, 7.)

13        Further, Plaintiff argues, Dr. Hadweh opined Plaintiff could at most sit only two hours per

14  workday, stand only two hours per workday, and walk only two hours per workday, resulting in a

15  maximum ability to work only five hours per day.   (Doc. 12, 6.)  Plaintiff contends that even if

16  the limitations opined by Dr. Hadweh do not establish equivalence under Listing 1.04(c), these

17  findings demonstrated an inability to perform regular and continuing work activities that render

18  Plaintiff disabled. (Doc. 12, 6.)  Also, Dr. Hadweh found Plaintiff needed to ambulate with a cane

19  and could reach, handle, and finger only occasionally – findings which Plaintiff argues severely

20  erode the sedentary occupational base.  (Doc. 12, 6-7 (citing SSR 96-9p, 1996 WL 374186 (S.S.A.

21  1996) and SSR 85-15, 1985 WL 56857 (S.S.A. 1985)).)  Plaintiff contends that had Dr. Hadweh's

22  opinion been properly and fully credited, he would have been found disabled.

23        The Commissioner disagrees, contending the ALJ properly evaluated the medical evidence

24  from Plaintiff's medical providers and properly determined that at the time of Plaintiff's last date

25  insured, he was capable of performing past relevant sedentary work.  (Doc. 13, 4.)   The

26  Commissioner disputes Plaintiff's claim that the use of a cane for ambulation precludes the ability

27  to perform past relevant sedentary work, and argues that regardless, Plaintiff presented no

28  evidence that he actually needed a cane for ambulation and or was ever prescribed one. (Doc. 13,

5.)  The Commissioner also raises a new argument for discounting Dr. Hadweh's opinions: that Dr. Hadweh's opinion is entitled to reduced weight because he did not begin treating Plaintiff until more than a year and a half after his date last insured.  (Doc. 13, 4-5.)  Finally, the Commissioner contends, the ALJ properly based his RFC determination on the "record as a whole" rather than on any one medical opinion, and "properly incorporated the medical evidence that was most reliable and consistent with the overall record."  (Doc. 13, 7.)

Here, the ALJ acknowledged that he gave "significant weight" to treating physician Dr. Hadweh's opinion because it was "generally consistent" with lumbar degenerative disease and obesity, but discounted the opinion on the basis that Plaintiff was "more physically capable than opined by Dr. Hadweh."  (AR 15.)  Dr. Hadweh had opined that Plaintiff (1) required the use of a cane to ambulate; (2) could only occasionally handle, finger, feel, push, pull, or reach in all directions; (3) could never climb, balance, stoop, kneel, crouch, or crawl; and, (4) could only walk 1 hour per day, and could only sit or stand 2 hours per day.  (AR 15.)  Contrary to Dr. Hadweh's opinion, the ALJ concluded that Plaintiff could sit for 6 hours, stand and walk for 2 hours, and was capable of occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs.  (AR 14.)  The ALJ cited no specific medical evidence contradicting Dr. Hadweh's findings, but instead generally discounted the full extent of limitations opined by Dr. Hadweh opinion as unsupported by his examination findings, noting that Plaintiff's "normal extremities (see Exhibit 5F, pp. 9, 15) tend to show that he is not as limited" as Dr. Hadweh had opined.  (AR 15.)

While an ALJ may reject a physician's opinion as unsupported or inconsistent with examination findings, *see Tomassetti*, 533 F.3d at 1041, the record does not support the ALJ's reasoning in this regard.   The "normal" extremities the ALJ cited as contradicting Dr. Hadweh's assessment of Plaintiff's level of impairment appear to refer to Dr. Hadweh's examination progress notes.  These notes were completed at some time during each of Plaintiff's follow-up appointments with Dr. Hadweh's office.  The progress notes contain checklists of objective criteria, with body parts objectively assessed for functioning.  (*See, e.g.*, AR 209-11; 215-18; 220; 222; 226-30.)  Each progress note contains a list of objective criteria, including a line for assessing

1    "Extremities: NL __", followed by the medical professional's check mark to indicate a particular

2    category of objective criteria revealed normal findings on examination.

3         For example, a progress note dated December 15, 2011, had check marks next to "Lungs:

4    Normal" and "Heart: Normal," but no check mark next to "Extremities: Normal." (AR 209.)  Two

5    of the progress notes between May 2011 and December 2011 had check marks next to the

6    "Extremities: Normal" line (*see* AR 216 (August 27, 2011); 222 (June 2011)), while other

7    progress notes omitted a check mark next to "Extremities: Normal," but had check marks next to

8    *other* objective categories (*see* AR 209 (December 2011); 211 (October 2011); 220 (July 2011);

9    226 (undated 2011); 227 (May 2011)), while still other progress notes placed *no* check marks next

10   to *any* objective criteria (*see* AR 210 (November 2011); 215 (September 2011); AR 217 (August

11   13, 2011); 218 (August 3, 2011)).   It is unclear whether on these last occasions, where no

12   objective criteria were assessed by checkmark, objective criteria were either not considered or

13   were considered and were simply not recorded.

14        The ALJ's articulated reason for rejecting the extent of Dr. Hadweh's assessment of

15   Plaintiff's exertional and dexterity limitations was that two progress notes, one in June and one in

16   August of 2011, had check marks next to the "Extremities: Normal" line.  (AR 15; *see* AR 216;

17   222.)  The ALJ determined that these two occasions of "normal extremities" were enough to

18   "show that [Plaintiff] is not as limited" and "more physically capable than opined by Dr.

19   Hadweh." (AR 15.)

20        However, in view of the record as a whole, these two isolated check marks indicating

21   normal extremities do not constitute a specific and legitimate basis to reject a portion of the

22   limitations to which Dr. Hadweh opined.  First, the notation of normal extremities does not offer

23   an objective assessment of Plaintiff's condition or capacity – a checkmark by "normal" does not

24   indicate the degree of strength, range of motion, or mobility Plaintiff retained in his extremities.  It

25   is difficult to assess what "normal extremities" meant in the context of the examination, much less

26   in the context of Plaintiff's retained exertional and dextral capacity.  Second, despite recording

27   two isolated normal extremity findings, Dr. Hadweh prescribed Plaintiff a four-wheeled walker for

28   ambulation in May 2011.  (AR 229).  While the Commissioner notes this could have been at

1    Plaintiff's behest, the medical record does not support such an inference.  Rather, the progress

2    notes repeatedly indicate Plaintiff suffered from chronic back pain and neuropathy, while MRI

3    results showed spinal canal stenosis, bilateral neural foraminal stenosis ranging in severity from

4    prominent to mild, diffuse disk bulging, and disk herniation.  (AR 213.)  In the context of all of

5    Dr. Hadweh's examination findings, a check mark indicating normal extremities on two isolated

6    progress reports indicates little more than on two occasions, Plaintiff was not as symptomatic.  *See*

7    *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (citing 20 C.F.R. § 404.1512(a) ("Occasional

8    symptom-free periods – and even the sporadic ability to work – are not inconsistent with

9    disability.")).

10         The Commissioner also asserts the ALJ appropriately gave less weight to the work

11   capacity form that opined to Plaintiff's limitations because it was completed by Dr. Hadweh's

12   physician's assistant ("PA"), Renaldo Regalado, and not by treating physician Dr. Hadweh.  The

13   Commissioner contends that Dr. Hadweh's opinion is entitled to less weight because Plaintiff did

14   not seek treatment with Dr. Hadweh until May 2011, more than a year and a half after Plaintiff's

15   date of last insured.  As such, Dr. Hadweh had no first-hand information regarding Plaintiff's

16   condition before the date of his last insured.  His opinion was based only on his examination notes

17   and findings in May 2011.  Although Dr. Hadweh opined to extensive exertional and dexterity

18   limitations, he had provided only medication to Plaintiff and had not prescribed any additional

19   treatment or physical therapy.  According the Commissioner, Dr. Hadweh's examination notes

20   themselves reveal "little in the way of functional limitations."  (Doc. 13, 6:3.)

21         Although Dr. Hadweh's PA signed the May 2011 disability assessment form, Dr.

22   Hadweh's signature also appears on that form and the ALJ credited it as an opinion of Dr.

23   Hadweh.  (AR 15.)  Thus, the fact that the PA may have assisted Dr. Hadweh in completing it

24   does not appear to be a reason the ALJ considered in rejecting the extent of the limitations opined

25   on the form.  Further, the ALJ never raised the issue of the form having been completed after

26   Plaintiff's last date of insured, nor did the ALJ consider that as a basis to discredit a portion of the

27   opinion.   The assessment form signed by Dr. Hadweh contained a section stating that the

28   limitations were considered to be an opinion about current limitations only; however, the form

also stated that if the physician had sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations, the physician was to state the date on which the limitations were first presented.  (AR 236.)  Dr. Hadweh indicated Plaintiff's limitations, as opined to in the form, were first present in October 2008 – before Plaintiff's date of last insured. (AR 236.)   The ALJ did not discredit Dr. Hadweh's opinion for having been formed after Plaintiff's last date insured, and the Court cannot consider grounds for rejecting a physician's opinion that were not invoked by the ALJ.  *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Finally, the ALJ gave very little weight to the opinions of non-examining state agency doctors who rendered opinions about Plaintiff's functional limitations.  Not only was the ALJ's partial rejection of Dr. Hadweh's opinion not predicated on the opinions of these non-examining physicians, but the ALJ assigned little weight to these opinions because the non-examiners had not reviewed the September 2011 MRI results produced by Plaintiff at the hearing.  (AR 15-16 (noting that both Drs. Bobba and Ligot had agreed in April and June 2011 that the record was insufficient to establish the existence of a medically determinable and severe impairment).)  When considering the entire medical record, including Dr. Hadweh's examination findings, the objective testing, and that little weight was given to the contradictory opinions of the non-examining state agency physicians, the ALJ's partial rejection of Dr. Hadweh's opinion based on two isolated normal extremities findings during the course of treatment is not specific and legitimate.

In sum, because the ALJ's reasons for discounting Dr. Hadweh's opinion were not specific or legitimate, the ALJ must give renewed consideration to Dr. Hadweh's opinion on remand.

**2.      The ALJ's Consideration of Dr. Nomicos' Opinion**

On December 29, 2009, Dr. Nomicos opined Plaintiff was "unable to do his customary work" as of February 15, 2009.  (AR 188.)  The ALJ afforded this opinion "very little weight" because it was an issue reserved to the Commissioner, it was inconsistent with the "normal extremities" findings in Dr. Hadweh's progress notes, and it was inconsistent with Dr. Hadweh's opinion that Plaintiff could lift and carry 10 pounds occasionally.  (AR 15.)

1    Plaintiff contends these reasons are not sufficiently specific and legitimate to support

2    rejecting Dr. Nomicos' opinion.  First, while not entitled to deference by the ALJ, a physician's

3    opinion on the ultimate issue of disability is still entitled to consideration.  Second, the normal

4    extremities findings made on two occasions in Dr. Hadweh's progress notes were not a legitimate

5    basis to discredit Dr. Hadweh and therefore are not a legitimate basis to discredit Dr. Nomicos.

6    Third, Dr. Nomicos never opined as to Plaintiff's particular lifting limitation, thus there was no

7    inconsistency with Dr. Hadweh's opinion to form a basis for rejecting Dr. Nomicos' opinion in

8    this regard.

9    The Commissioner contends Dr. Nomicos' opinion that Plaintiff could not return to his

10   past relevant work was not a medical opinion, but rather an opinion reserved to the Commissioner

11   and thus was entitled to no consideration at all.  Further, Plaintiff's ability to do his past relevant

12   work is not dispositive of disability and Plaintiff's alleged inability to perform past relevant work

13   does not necessarily mean that Plaintiff was disabled from performing *any* work.

14   Dr. Nomicos's form opinion contained the following question for the physician completing

15   the form:  "At any time during your attendance for this medical problem, has the patient been

16   incapable of performing his/her regular or customary work?"  (AR 188.)  Dr. Nomicos checked

17   the box for "yes" and wrote the date the disability began: February 15, 2009. (AR 188.)  Although

18   an ALJ is "not bound by the uncontroverted opinions of the claimant's physicians on the ultimate

19   issued of disability . . . he cannot reject them without presenting clear and convincing reasons for

20   doing so."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998) (internal quotation marks

21   omitted).  A treating physician's opinion on the ultimate issue of disability may not be rejected,

22   even if controverted, absent "specific and legitimate reasons supported by substantial evidence in

23   the record."  *Id*.  The fact that Dr. Nomicos opined as to the ultimate issue of disability is not a

24   sufficient basis, by itself, for rejecting Dr. Nomicos' opinions on the remainder of the form.

25   The ALJ also rejected the opinion because of the normal extremity findings on Dr.

26   Hadweh's progress notes.  (AR 15.)  For the reasons discussed above, however, two isolated

27   normal extremity findings accompanied by no other discussion, in light of the other objective test

28   results and examination findings and notations, was not a specific and legitimate reason to reject

1   Dr. Hadweh's opinion.  Therefore, it is also not a legitimate reason to reject Dr. Nomicos' opinion.

2         Dr. Nomicos' opinion was also given little weight because it contradicted with the

3   exertional limitations opined to by Dr. Hadweh, which the ALJ did credit.  As Plaintiff notes,

4   however, Dr. Nomicos did not opine to any exertional limitations, and it is unclear how his

5   opinion contradicts the exertional limitations opined to by Dr. Hadweh.

6         Finally, although the Commissioner asserts Dr. Nomicos only opined to Plaintiff's ability

7   to return to his previous work, Dr. Nomicos specifically rendered an opinion related to Plaintiff's

8   ability to stand and walk.  (AR 188.)  Specifically, Dr. Nomicos opined Plaintiff was severely

9   debilitated and was "unable to walk without [a] cane [or] assistance."  (AR 188.)  This opinion

10  bears not only on Plaintiff's ability to perform his *past* work, but also his ability to perform *other*

11  work at different exertional levels.

12        In sum, because the ALJ's reasons for discounting Dr. Nomicos' opinion were not specific

13  or legitimate, the ALJ must give renewed consideration to Dr. Nomicos' opinion on remand.

14  **B.      Remand is Appropriate**

15        Remand is appropriate when, like here, a decision does not adequately explain how a

16  conclusion was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc

17  explanations for such unexplained conclusion," for "the Commissioner's decision must stand or

18  fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Barbato*

19  *v. Comm'r of Soc. Sec.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (internal citations omitted);

20  *Ceguerra*, 933 F.2d at 738 (the Court cannot affirm the ALJ's conclusions on grounds that were

21  not invoked by the agency).

22        The ALJ's decision was based on an improper discounting of Dr. Hadweh's opinion of

23  Plaintiff's physical condition and subsequent rejection of Dr. Hadweh's opinion regarding

24  Plaintiff's exertional and dextral limitations.  The ALJ also improperly discredited Dr. Nomicos'

25  opinion.   The Court therefore reverses and remands this case to the Commissioner for

26  reconsideration of Drs. Hadweh and Nomicos' opinions regarding Plaintiff's physical condition

27  and limitations, and such other issues as may be affected by this error, and to conduct such further

28  proceedings and engage in such further consideration as may be appropriate.

## VI.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.   The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Steven Edward Felipe and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 17, 2015**                    **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE